# CASES

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1912.

William Beard et al., Plaintiffs in Error, v. Chicago Home for Convalescent Women and Children, Defendant in Error.

### Gen. No. 16,933.

1. CONTRACTS—*construction of letter from charitable organization engaging operatic society.* Where a charitable organization is to give an entertainment and its president writes to the president of an operatic society, "we understood that the society is to be paid nine hundred dollars which would include the payment of the chorus for the rehearsals, their payment for the two performances coming from the proceeds," the comma between "rehearsals" and "their" does not indicate that the society is to be paid absolutely if the money is not realized, in view of the fact that the other party is a charitable organization.

2. CONTRACTS—*evidence not showing a meeting of minds.* An agent of a charitable organization negotiated with the president of an operatic society as to the giving of an entertainment, and the president desiring a confirmation informed the president of the organization that he expected a certain sum whether it was realized by the entertainment or not. In reply he was informed that there was no such understanding but that the society was to be paid a certain sum, which would include payment to the chorus for the rehearsals, their payment for the performances coming from the proceeds, and that all expenses were to be paid from the proceeds and the surplus to go to the charity. *Held*, there was no meeting

(268)

Beard v. Chicago Home for Convalescent W. and C., 171 Ill. App. 268.

of the minds to constitute a contract to pay the sum if it was not realized.

Error to the Municipal Court of Chicago; the Hon. HARRY OLSON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed June 4, 1912. Rehearing denied June 18, 1912.

TAYLOR & LUNDAHL, for plaintiffs in error.

ARND & ARND, for defendant in error.

MR. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

Plaintiffs in error began an action of the fourth class in the Municipal Court of Chicago to recover about $900 for certain operatic performances rendered by them for defendant in error on December 15 and 17, 1909. A jury was waived and the cause tried before the court, and resulted in a judgment in favor of defendant in error.

Upon this writ of error we have for consideration but one question, and that is, Did the defendant in error agree to pay the plaintiffs in error for the two operatic performances any given sum to be paid *absolutely* or, was the service to be paid for solely out of the proceeds derived from the performances?

Plaintiffs in error are members of the Chicago English Opera Society, consisting of seventeen principals, and, in rendering the theatrical performance, they employed a chorus of about fifty-six members. Defendant in error, Chicago Home for Convalescent Women and Children, a corporation, is a charitable organization, providing homes for indigent women and children in a state of convalescence, and aiding them to secure employment after recovery. It is said to be maintained entirely by charitable contributions. Its president in 1908 was Mrs. Dr. Babcock, who then had a home at Green Lake, Wisconsin, where she gave a lawn party for the benefit of the "Home." A Mr. Cameron was

in attendance at the lawn party, and suggested to Mrs. Babcock the desirability of giving an opera for the benefit of the ''Home.'' Some time in October, 1909, he met Mr. Bissell, the president of the plaintiff Society, with whom he subsequently conferred about the details concerning the proposed entertainments, Mr. Cameron acting apparently as the friend of both parties, though especially interested in the affair, because he believed it would result in financial gain to the ''Home.'' The arrangements for the performance to be given were nearly perfected when Bissell required a confirmation by Mrs. Babcock of the proposed agreement. Accordingly, on the 3rd or 4th of December, 1909, Mr. Bissell had a telephone interview with Mrs. Babcock, in which he informed her concerning the negotiations, stated the terms upon which the performances were to be given, and requested that she confirm the agreement between him and Cameron by letter, as he had been promised that this should be done. Bissell testified to having told Mrs. Babcock over the telephone that he had requested Mr. Cameron to ask her to write a letter, stating that the principals were to be paid $900 for the services, and that the chorus was to be paid at the rate of $3 each for each performance, and gave as a reason for requiring such a letter that the members of the Society were asking him for this verification of their understanding. He testified further that she replied to the effect that she did not understand the arrangement as he had stated it, but understood that the money was not to be paid except in the event of the performances proving successful, that is, unless they resulted in a profit. He then told her that it would be impossible for the Society to go ahead on any such understanding; that they had given much time to rehearsing, and expected to be paid, regardless of the outcome, and could not proceed on any other understanding. Whereupon, he says, she promised that she would write him a satisfactory letter. About a week later, he received a letter from Mrs.

Babcock, dated December 10th, which reads as follows: "37 Bellevue Place. Mr. Bissell. Dear sir: In accordance with our conversation over the telephone, in which you ask for my understanding of the arrangements through Mr. Cameron with your Chicago English Opera Society, I would say that we understood that the Society is to be paid $900 which would include the payment of the chorus for the rehearsals, their payment for the two performances coming from the proceeds. All expenses to be paid from proceeds, and anything left over to come to Chicago Convalescent Home.

Very truly,

Dec. 10th.               (Signed) L. W. BABCOCK."

After receipt of this letter by Mr. Bissell, no further negotiations were had. The entertainments were given on the 15th and 17th of December, 1909, and were a failure from a financial standpoint, resulting in a loss of over $300, without any payment to the Opera Society. After the performances had been given various letters passed between Mr. Bissell, Mr. Cameron and Mrs. Babcock, and various suggestions were made as to other schemes or enterprises proposed with a view of raising money with which to pay the loss sustained, and, some part at least, of the amount claimed by plaintiffs in error.

On the trial plaintiffs in error submitted six propositions of law, upon which defendant in error marked "No objections," and all of which were marked "Held" by the court. Plaintiffs in error claim here that, applying the propositions of law to the facts, the court below erred in rendering judgment for the defendant in error.

Upon the hearing in the court below, defendant in error offered no testimony. We have carefully considered that offered on behalf of plaintiffs in error, and are of the opinion that the court below reached a correct conclusion.

Plaintiffs in error desired to give these perform-

ances under the auspices of the "Home" because they thought it would be a good thing for them, and for the "Home." They would thereby be brought before the public in a way that would give them more prestige and favorable standing in the community than would be possible if they gave their entertainments under different auspices. Then, too, it was believed that the performances would afford a convenient way of raising money for the charity. The arrangement had its advantages to both parties, and, in our view, each party took the chances involved in the financial outcome of the effort. It is not unreasonable to believe that the Society was willing to take these chances for the benefit to it in thus being brought before the public by the prominent persons connected with the "Home," with whatever prestige that might bring it. The "Home," as a charitable organization, had no money which it would be justified in using to exploit the capacities of the members of the Society. Its charitable work required expenditure of money, and its representatives doubtless believed the entertainments would result beneficially to both parties. It is unreasonable to believe that the "Home" would hazard the large sum of money involved in making a contract for the absolute payment of the entire expenses of the entertainments, including the $900 sued for. Indeed, it is doubtful whether it would have any right to do so, though the defense of *ultra vires* is not specifically raised, and is suggested by us as bearing upon the probabilities, and affording some guide for the construction of Mrs. Babcock's letter.

Plaintiffs in error concede that they are not concerned in this suit with any supposed obligation of the "Home" to pay the members of the chorus $3 each for each of the two performances, but are claiming only the $900, with interest; and they contend that Mrs. Babcock's letter of December 10th, in which she says that "we understood that the society is to be paid nine hundred dollars which would include the payment

Beard v. Chicago Home for Convalescent W. and C., 171 Ill. App. 268.

of the chorus for the rehearsals, their payment for the two performances coming from the proceeds. All expenses to be paid from the proceeds, and anything left over to come to Chicago Convalescent Home,'' when construed in the light of the fact that she placed a comma between the words ''rehearsals'' and ''their'' in the phrase ''for the rehearsals, their payment for the two performances coming from the proceeds,'' indicates that Mrs. Babcock understood that the ''Home'' was to pay to the Society $900 absolutely, this amount to include the payment of the chorus for the rehearsals, and that the subsequent phrase, ''their payment for the two performances coming from the proceeds,'' meant only the payment to the chorus. We cannot adopt this construction of the letter, in view of the fact that the defendant in error is a charitable organization, supported entirely by charitable contributions.

Mrs. Babcock's letter of December 10th, states her understanding to be ''that the Society is to be paid nine hundred dollars which would include the payment of the chorus for the rehearsals, their payment for the two performances coming from the proceeds. *All expenses to be paid from the proceeds, and anything left over to come to Chicago Convalescent Home.*'' Mr. Bissell's testimony is not inconsistent with this construction of the letter. He testifies that in his telephone interview with Mrs. Babcock, occurring nearly a week before, she then stated that she understood that the money was not to be paid except in the event of there being a profit on the performances; and this understanding on her part is confirmed by her letter dated December 10th. Bissell testifies that, to the best of his recollection, he told Cameron, the Society would ask $1,000 for the two performances, which would include the pay of the principals only; that Cameron thought $500 would be all the ''Home'' would pay; that, after some figuring, he and Cam-

eron practically agreed on the sum of $900, which should pay the principals, and the chorus was to be paid at the rate of $3 each for each performance over and above $900 for the principals, though nothing was said as to who should pay the chorus for the rehearsals. Bissell said they would expect the "Home" to pay all expenses pertaining to the performances, such as the hire of the costumes, the rent of the scenery and rent of the theatre, advertising expenses, in fact, all expenses except the payment of the principals and chorus. This suggestion Mr. Cameron was to submit to the board of directors of the "Home," and, a few days later, Cameron informed the witness that the board had accepted the proposition. But Mr. Bissell then told Cameron that he wished either a letter from the president, or something of that kind, to bind the agreement so that he could show it to the members of the Society, which Mr. Cameron told him he would secure. Concerning the telephone interview with Mrs. Babcock, which occurred on the 3rd or 4th of December, Bissell testifies that, after he had explained to her "my understanding of the arrangement," she expressed surprise at it.

To constitute a valid contract it is essential that the minds of the contracting parties must have met, and we think the testimony in this case fails to establish such meeting of minds as to constitute the supposed contract sued on.

We think the court below properly applied the propositions of law to the evidence, and its judgment will, therefore, be affirmed.

*Judgment affirmed.*